929 A.2d 1130 (2007)
395 N.J. Super. 533
STATE of New Jersey, Plaintiff-Respondent,
v.
Jay C. FISHER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 8, 2006.
Decided August 14, 2007.
*1131 Carl D. Poplar, Cherry Hill, attorneys for appellant (Mr. Poplar, of counsel and on the brief; David E. Poplar, on the brief).
Stuart Rabner, Attorney General, attorney for respondent (Frank Muroski, Deputy Attorney General, of counsel and on the brief).
Before Judges AXELRAD, R.B. COLEMAN and GILROY.
The opinion of the court was delivered by
COLEMAN, R.B., J.A.D.
Defendant Jay C. Fisher entered a conditional plea of guilty to a third degree charge of knowingly leaving the scene of a motor vehicle accident resulting in death, N.J.S.A. 2C:11-5.1. He now appeals from the January 23, 2006, order of the Law Division denying his motion to declare that statute unconstitutional. We affirm the order of the Law Division.
The challenged statute, N.J.S.A. 2C:11-5.1[1], provides that:
A motor vehicle operator who knows he is involved in an accident and knowingly leaves the scene of that accident under circumstances that violate the provisions of [N.J.S.A.] 39:4-129 shall be guilty of a crime of the third degree if the accident results in the death of another person.
N.J.S.A. 39:4-129, the motor vehicle statute, incorporated by reference into the challenged criminal statute provides, in pertinent part, as follows:
The driver of any vehicle, knowingly involved in an accident resulting in injury or death to any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene until he has fulfilled the requirements of subsection (c) of this section.
[N.J.S.A. 39:4-129(a).]
In turn, subsection (c) of N.J.S.A. 39:4-129 expresses the following mandate:
The driver of any vehicle knowingly involved in an accident resulting in injury or death to any person or damage to any vehicle or property shall give his name and address and exhibit his operator's license and registration certificate of his vehicle to the person injured or whose *1132 vehicle or property was damaged and to any police officer or witness of the accident, and to the driver or occupants of the vehicle collided with and render to a person injured in the accident reasonable assistance, including the carrying of that person to a hospital or a physician for medical or surgical treatment, if it is apparent that the treatment is necessary or is requested by the injured person.
In the event that none of the persons specified are in condition to receive the information to which they otherwise would be entitled under this subsection, and no police officer is present, the driver of any vehicle involved in such accident after fulfilling all other requirements of subsections (a) and (b) of this section, insofar as possible on his part to be performed, shall forthwith report such accident to the nearest office of the local police department or of the county police of the county or of the State Police and submit thereto the information specified in this subsection.
In a statement voluntarily given on Wednesday, July 30, 2005, defendant stated that he was driving home in the early morning hours of Sunday, July 27, 2005, after a night out with friends when he struck something on the roadway. Initially, he stated that this occurred on State Highway 77, but later he admitted it occurred on Richwood Road in Upper Pittsgrove Township. Defendant said he swerved his truck to avoid a dark object on the roadway, but felt the object hit his front and rear tire. Defendant did not stop at the scene and never reported the incident to the police. Defendant initially maintained that he thought he had run over the carcass of a deer. When he arrived at home, he saw a dent in his bumper and noticed that the right fog light was missing. Later that day, defendant noticed blood on the passenger side of the bed of his truck and on the lower part of the extended cab area. That afternoon, he went to his car dealership and washed the truck.
The next day, Monday, July 28, 2005, defendant was informed by an employee that there had been a hit-and-run accident on Richwood Road. It was then that defendant claims he first realized he had hit a person  not a deer. Nevertheless, he continued to tell his coworkers he had hit a deer on State Highway 77. That day, he placed an order with his parts manager for a new fog light and bumper for his truck. Defendant stated that he reached for his telephone on Tuesday night to call the police about the incident, but he did not make the call because he was afraid of what would happen.
On Wednesday, investigators, acting on information received, went to the dealership and met with defendant, who acknowledged he owned the damaged truck in the parking lot. He told the investigators he struck a deer on Highway 77. Later, at police headquarters, he gave a formal statement acknowledging that he struck something on Richwood Road.
The State Police had been called to the scene at Richwood Road on the morning of the accident. There, they discovered the body of Joshua Terrazas in the roadway. Terrazas was pronounced dead at the scene. Investigators gathering evidence at the scene found a clear lens which appeared to have blood on it. The lens bore the markings "SAE F 99 BLAZER" on the bottom center and "19018" on the bottom right corner. From those markings, the lens was determined to be a fragment from a passenger side fog light from a 1999 to 2002 full size Chevrolet Silverado pickup truck or a 2000 to current Chevrolet Tahoe or Suburban. Accordingly, notice was given to local General Motors dealerships to monitor any inquiries about *1133 the particular part and to report any customer orders for the part.
Thereafter, investigators received a telephone call from a concerned citizen, who said there was a 2000 GMC Sierra pickup truck at Fisher Pontiac in Elmer with damage to the passenger side front bumper and fog light. Upon arrival at the dealership, investigators observed defendant's truck, which had a broken fog light and visible damage to the lower right side of the vehicle. Although defendant had already washed his truck, the truck was seized and samples of human tissue were recovered from the tow hitch. Those samples matched the decedent's DNA.
Based on a review of the physical evidence at the scene and from statements and the examination of defendant's truck, the investigators concluded that the decedent was the primary cause of the accident and that he apparently had been sitting or crouching down near the center of the southbound lane of Richwood Road when he was struck by the vehicle. Thus, defendant was not charged with an offense for causing injury or death.[2] He was, however, charged with third degree knowingly leaving the scene of a motor vehicle accident, contrary to N.J.S.A. 2C:11-5.1 and with two counts of hindering the detention, apprehension, investigation, prosecution, conviction or punishment of another for an offense or violation of Title 39, N.J.S.A. 2C:29-3b(1) and (4). Defendant filed a motion to be admitted into Pretrial Intervention (PTI) but that motion was denied, as was his motion seeking a declaration that N.J.S.A. 2C:11-5.1 is unconstitutional.
On October 17, 2005, defendant conditionally pled guilty to the single count of knowingly leaving the scene of the accident, N.J.S.A. 2C:11-5.1, preserving his right to pursue his challenge of the statute as unconstitutional. On January 10, 2006, Judge William L. Forester denied the motion and imposed a non-custodial sentence of probation for five years and a $5,000 fine. Other appropriate fees and assessments were imposed, and on the State's motion, the two counts for hindering were dismissed. On January 23, 2006, Judge Forester issued a seven-page written opinion setting forth the court's reasons for rejecting defendant's constitutional challenge to N.J.S.A. 2C:11-5.1.
Defendant argues "[t]he reporting requirements of N.J.S.A. 2C:11-5.1 force a driver who has been involved in an accident that resulted in serious injury or a fatality to face a `Hobson's choice': he could either abide by the statute and report his involvement, facing prosecution under other laws; or he could exercise his Fifth Amendment right to silence, facing prosecution under N.J.S.A. 2C:11-5.1 (and potentially other laws as well)."
By contrast, the State contends that N.J.S.A. 2C:11-5.1 does not compel drivers to disclose anything. Rather, it argues the Criminal Code encourages the physical act of remaining at the scene of the accident and the driver is compelled by the statute to report the accident only after he or she chooses to leave the scene. The State emphasizes that a driver who remains at the scene could not be charged with the crime defined by N.J.S.A. 2C:11-5.1  even though that driver fails or refuses to provide any information to responding police.
The trial court, obviously persuaded by the arguments of the State, held that the *1134 triggering event for culpability under N.J.S.A. 2C:11-5.1 is the physical act of leaving the scene of the accident. After hearing oral arguments, the court concluded the statute is "constitutionally appropriate." The trial court explained that "had [defendant] stopped, had he made a timely report, immediate report, rendered assistance if that was appropriate, but at a minimum, reported it to the police then . . . he would have had a complete defense which he does not have [ ] because he did not stop and did not report . . . that there was an accident of some sort."
We agree with that reasoning, but in his subsequent written opinion, the judge wrote:
The Court concludes that the motor vehicle statute is not fully incorporated in the Title 2C violation, that the act of leaving the scene, not failing to report, is the action punished under N.J.S.A. 2C:11-5.1, and that the reporting requirement only requires the driver to furnish his name, address, license, and registration, a very minimal amount of information. Therefore, there is no risk of self-incrimination.
We reject the view that it is only "the act of leaving the scene, not failing to report," that is punishable under N.J.S.A. 2C:11-5.1. The failure to identify oneself and the failure to report to the police are critical components of the crime defined in N.J.S.A. 2C:11-5.1. On the other hand, we agree that, under the facts of this case, defendant's compliance with the statute would have exposed him to little or no risk of self-incrimination.
Comparing the protection afforded by the Fifth Amendment with the protection afforded under our State laws,[3] the Court in State v. Patton, 133 N.J. 389, 395-96, 627 A.2d 1112 (1993), stated:
The Fifth Amendment to the United States Constitution protects persons against governmental compulsion to disclose information that would tend to incriminate them. In re Martin, 90 N.J. 295, 331, 447 A.2d 1290 (1982). That protection was extended to the states through the Due Process Clause of the Fourteenth Amendment in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Although our state constitution does not have a similar provision, the privilege itself "is firmly established as part of the common law of New Jersey and has been incorporated into our Rules of Evidence." Martin, supra, 90 N.J. at 331, 447 A.2d 1290; see Evid R. 24, 25. In some instances we have held that the state common-law privilege affords greater protection to an individual than that accorded under the federal privilege. See, e.g., State v. Reed, 133 N.J. 237, 269, 627 A.2d 630, 647 (1993); In re Guarino, 104 N.J. 218, 229-32, 516 A.2d 1063 (1986). However, as they relate to the issue before us, the state and federal privileges are coextensive.
The Patton Court made it clear that the Fifth Amendment and the State privilege against self-incrimination apply to compelled actions as well as compelled testimony.
The privilege against self-incrimination does not shield only against compelled testimony. It also applies to actions compelled by law if the act itself provides evidence that threatens to implicate *1135 the actor in a violation of law. United States v. Doe, 465 U.S. 605, 612-13, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552, 560 (1984). The privilege is implicated when the information sought to be extracted or the action compelled by statute presents a realistic threat of incrimination.
[Id. at 396, 627 A.2d 1112.]
By its express terms, N.J.S.A. 2C:11-5.1 makes it a crime of the third degree for an operator who knows he is involved in an accident to "knowingly leave[ ] the scene of that accident under circumstances that violate the provisions of [N.J.S.A. 39:4-129]," if the accident results in the death of another person (emphasis added).[4] After fulfilling the requirements of subsection (a) and (b) to stop and remain at the scene, if a driver of a vehicle involved in an accident resulting in death leaves the scene, he must, pursuant to subsection (c), seek out a police officer, report the accident and give his name and address and exhibit his motor vehicle credentials. Thus, the constitutional challenge under the Fifth Amendment is not necessarily answered by saying it is only the act of leaving the scene that triggers a violation of the statute. Failing to report the accident can also trigger a violation.
Referring to N.J.S.A. 39:4-129 as the "hit and run" statute, our Supreme Court and this court have both emphasized not only the obligation of the driver to remain at the scene, but also the affirmative requirement of prompt self-identification. The Supreme Court noted in State v. Gill, 47 N.J. 441, 443, 221 A.2d 521 (1966), that the purpose of the statute "is to prohibit the automobile driver involved in an accident from evading his responsibilities by escaping or departing before his identity is made known." In this court's opinion in that same case, State v. Gill, 89 N.J.Super. 104, 109, 213 A.2d 871 (App.Div.1965), we, likewise, noted that N.J.S.A. 39:4-129 had been amended in 1926 to impose primary responsibility upon the operator of a vehicle involved in an accident to "voluntarily and immediately make known his identity to designated parties." Gill was a case involving only property damage to an unattended parked vehicle, but we found that the driver involved in an accident has an "affirmative duty of prompt self-identification" implicit in the statutory requirements. Ibid. That duty would apply with equal or greater force to accidents involving injury or death.
In its affirming opinion in Gill, the Supreme Court summarized the requirements of the statute as follows:
Section 129 directs that when the driver of a vehicle is knowingly involved in an accident resulting in personal injury or property damage he shall (1) immediately stop the vehicle at the scene of the accident, (2) give his name and address and exhibit his license and registration certificate to the injured person and the driver or occupant of the vehicle collided with "and to any police officer *1136 or witness of the accident," and (3) render assistance to the injured person.
[Gill, supra, 47 N.J. at 444, 221 A.2d 521.]
The Court noted that when Gill struck and damaged the parked automobile, he had an express responsibility under the statute to identify himself to any police officer or witness of the accident and "[t]here being no witness of the accident and no police officer at the scene, his implicit responsibility under the statute was to seek out a police officer." Id. at 446, 221 A.2d 521 (citing State v. Gill, supra, 89 N.J.Super. at 109, 213 A.2d 871). The same affirmative duty of prompt self-identification applied to the defendant in this case.
In short, the language of the motor vehicle statute and our case law interpreting it plainly require that a driver involved in an accident must remain at or return to the scene of the accident and must make known his identity to any injured party, witness and the police. Nonetheless, such requirements do not per force offend constitutional propriety. In that regard, we note, as the trial court did, that statutes are presumed to be constitutional. State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998); Gen. Motors Corp. v. City of Linden, 150 N.J. 522, 532, 696 A.2d 683 (1997). "The Court will invalidate a statute only if it is clearly repugnant to the Constitution." Gen. Motors Corp., supra, 150 N.J. at 532, 696 A.2d 683. Indeed, the New Jersey Supreme Court has recognized that it is the Court's duty to save a statute if it is reasonably susceptible to a constitutional interpretation. Right to Choose v. Byrne, 91 N.J. 287, 311, 450 A.2d 925 (1982). The court has an obligation "to interpret a statute in a way to avoid constitutional infirmity if such a construction is possible." State v. Walten, 241 N.J.Super. 529, 534, 575 A.2d 529 (1990). Courts must conform the Criminal Code to the Constitution in a way that the Legislature would have intended. Indeed, the Court has recognized that it may even be necessary to engage in "judicial surgery" to save an enactment that otherwise would be constitutionally doomed. See, e.g., State v. Natale, 184 N.J. 458, 485-86, 878 A.2d 724 (2005). See also Patton, supra, 133 N.J. at 398-400, 627 A.2d 1112 (granting use and derivative-use immunity to any person who complied with a statute that required any person in possession of a controlled dangerous substance to voluntarily deliver the substance to the nearest law enforcement officer).
No judicial surgery is necessary in this case. Nor is there a need to grant use or derivative-use immunity from prosecution. "[T]he Fifth Amendment privilege against compulsory self-incrimination `protects against any disclosure that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" Hiibel v. Sixth Judicial Dist. Court of Nevada, 542 U.S. 177, 190, 124 S.Ct. 2451, 2460, 159 L.Ed.2d 292, 305 (2004) (quoting Kastigar v. United States, 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). "The danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things,  not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct." Hiibel, supra, 542 U.S. at 190, 124 S.Ct. at 2460, 159 L.Ed.2d at 305 (quoting Brown v. Walker, 161 U.S. 591, 599-600, 16 S.Ct. 644, 647-48, 40 L.Ed. 819, 821-22 (1896)).
N.J.R.E. 502 and N.J.S.A. 2A:84A-18, which define "incrimination," provide that:

*1137 a matter will incriminate (a) if it constitutes an element of a crime against this State, or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) above.
The Rules of Evidence and the statute, however, add the following proviso:
a matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution. In determining whether a matter is incriminating . . . and whether a criminal prosecution is to be apprehended, other matters in evidence, or disclosed in argument, the implications of the question, the setting in which it is asked, the applicable statute of limitations and all other factors, shall be taken into consideration.
[Ibid.]
In this case, defendant hit an unidentified object on a rural roadway in the early hours of Sunday, July 27, 2005. He stated that he thought he had run over the carcass of a deer, though he later came to realize that he had probably hit a person. Based on their independent investigation of the scene and the point(s) of impact on defendant's truck, State Police investigators concluded that the decedent was either sitting, crouching or lying in the roadway immediately before defendant's truck made contact and thus the decedent  not the driver  was the primary cause of the accident. Under such circumstances, we conclude that there was no reasonable cause for defendant or anyone else to believe that defendant had acted recklessly in causing injury or death and, hence, defendant had no reasonable basis to apprehend criminal prosecution. Therefore, the privilege against self-incrimination was not implicated. N.J.R.E. 502.
Defendant maintains that when he hit the object in the road, he did not know what he had run over. He, nevertheless, had a duty to stop or return to the scene of the accident. N.J.S.A. 39:4-129. See Lo Biondo v. Allan, 132 N.J.L. 437, 40 A.2d 810 (1945) (holding that where a driver, whose vehicle struck a six-year old girl, felt a bump under the wheels and knew she had run over something, was under a duty of stopping immediately to investigate). See also State v. Valeriani, 101 N.J.Super. 396, 399-400, 244 A.2d 510 (App.Div.1968) (where driver left scene after he felt "bumpers tapping," because he could not at first see the minor damage was guilty of violating the statute because he had a duty to stop and investigate the potential damage, however slight). The obligation to investigate immediately and, if necessary, to render assistance pertained, and nothing in the record excuses defendant's failure to ascertain what he struck in the roadway and to report the accident.
On the day following the accident, while speaking with coworkers, defendant realized he was the driver of the vehicle that hit the person who was found dead on Richwood Road on Sunday morning. He still did not disclose his identity to the police, either because of his professed concern with self-incrimination or because he believed the statutory purpose of rendering assistance, advanced by prompt investigation and reporting, would no longer be served.
Concern over self-incrimination was not justified, because the United States Supreme Court observed in California v. Byers, 402 U.S. 424, 432, 91 S.Ct. 1535, 1540, 29 L.Ed.2d 9, 19 (1971), that "[d]isclosure of name and address is an essentially neutral act. Whatever the collateral *1138 consequences of disclosing name and address, the statutory purpose is to implement the state police power to regulate use of motor vehicles." Providing one's name, address and license information is regulatory type information, which does not implicate the provider in criminal conduct.
In Byers, supra, 402 U.S. at 427, 91 S.Ct. at 1537, 29 L.Ed.2d at 16-17, the Supreme Court considered a California statute, similar to N.J.S.A. 39:4-129, which required a driver of a vehicle involved in an accident to immediately stop at the scene of the accident and provide his or her name and address to the other owner or person whose property was damaged. The Supreme Court made the following common sense observations:
it is not a criminal offense under California law to be a driver "involved in an accident." An accident may be the fault of others; it may occur without any driver having been at fault. No empirical data are suggested in support of the conclusion that there is a relevant correlation between being a driver and criminal prosecution of drivers. So far as any available information instructs us, most accidents occur without creating criminal liability even if one or both of the drivers are guilty of negligence as a matter of tort law.
[Id. at 431, 91 S.Ct. at 1539, 29 L.Ed.2d at 19.]
It may be impractical or counterproductive to require a driver involved in an accident always to remain at the scene, and our Legislature has determined that if a driver leaves the scene, he must still disclose his identity. N.J.S.A. 39:4-129(c). For instance, here, where defendant claims he did not know he had been involved in an accident involving injury or death to another, the failure to remain at the scene may be understandable and excusable. However, in light of the legislative purpose of making known the identity of drivers involved in accidents, for potential civil and regulatory responsibility, the onus to report one's involvement to the police as soon as possible remains. Such reporting would not be the basis for criminal liability under N.J.S.A. 2C:11-5.1 because, so far as that statute is concerned, the reporting would constitute compliance.[5]
Even under circumstances more questionable than those presented in this case, criminal liability would not be the inevitable or likely result of compliance with the statutory reporting requirements. The disclosure would make known the driver's involvement in an accident, however, no further disclosure is compelled. Mandatory disclosure of one's name and address are, on balance, appropriately compelled. As the Court in Byers remarked:
Whenever the Court is confronted with the question of a compelled disclosure that has an incriminating potential, the judicial scrutiny is invariably a close one. Tension between the State's demand for disclosures and the protection of the right against self-incrimination is likely to give rise to serious questions. Inevitably these must be resolved in terms of balancing the public need on the one hand, and the individual claim to constitutional protections on the other; neither interest can be treated lightly.
[Id. at 427, 91 S.Ct. at 1537, 29 L.Ed.2d at 17.]
The disclosure of one's name and address does not entail a substantial risk of self-incrimination. "It identifies but does *1139 not by itself implicate anyone in criminal conduct." Id. at 434, 91 S.Ct. at 1541, 29 L.Ed.2d at 21.
Affirmed.
NOTES
[1] N.J.S.A. 2C:11-5.1 was amended in 2007 so that a person who violates the statute is now guilty of a crime of the second degree. Because that amendment took effect after the date of the offense in this case, it does not apply.
[2] The crime of death by auto, set forth in N.J.S.A. 2C:11-5a, provides that "[c]riminal homicide constitutes vehicular homicide when it is caused by driving a vehicle . . . recklessly." The defendant's reckless driving must be shown to have caused the death of another to sustain a conviction for death by auto. State v. Muniz, 118 N.J. 319, 324-25, 571 A.2d 948 (1990).
[3] N.J.S.A. 2A:84A-19 and N.J.R.E. 503 state "Subject to [N.J.R.E. 530 (waiver of privilege by contract or previous disclosure)], every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or forfeiture of his estate, except [as otherwise specified in subsections (a), (b), (c) and (d) under this rule]."
[4] In general, N.J.S.A. 39:4-129 is broader and more specific than N.J.S.A. 2C:11-5.1 in that subsection (a) of N.J.S.A. 39:4-129 applies to drivers knowingly involved in an accident resulting in injury or death to any person; subsection (b) applies to drivers of vehicles knowingly involved in an accident resulting only in damage to a vehicle or other property which is attended by any person; and subsection (c) applies to drivers of any vehicle knowingly involved in an accident resulting in injury or death to any person or damage to any vehicle or property. N.J.S.A. 2C:11-5.1 applies only to accidents resulting in death but, pursuant to N.J.S.A. 39:4-129(e), a rebuttable presumption of knowledge on the part of a driver arises if any accident involving a motor vehicle results in injury or death or damage in the amount of $250 or more to any vehicle or property.
[5] We note the investigators were able to ascertain defendant's involvement in the absence of self-identification. However, the statute is obviously intended to spare the investigators the additional burden they bore in this investigation.