975 A.2d 480 (2009)
408 N.J. Super. 412
STATE of New Jersey, Plaintiff-Respondent,
v.
Laura MORAN, Defendant-Appellant.
No. A-3810-07T4
Superior Court of New Jersey, Appellate Division.
Argued February 9, 2009.
Decided July 28, 2009.
*484 Donald M. Lomurro, Freehold, argued the cause for appellant (Lomurro, Davison, Eastman & Munoz, P.A., attorneys; Jonathan *485 H. Lomurro, of counsel and on the briefs).
Carey J. Huff, Assistant Prosecutor, argued the cause for respondent (Luis A. Valentin, Monmouth County Prosecutor, attorney; Ms. Huff, of counsel and on the brief).
Before Judges LISA, REISNER and SAPP-PETERSON.
The opinion of the court was delivered by
LISA, P.J.A.D.
This appeal calls into question the continued viability and constitutionality of N.J.S.A. 39:5-31, which provides:
The director or any magistrate before whom any hearing under this subtitle is had may revoke the license of any person to drive a motor vehicle, when such person shall have been guilty of such willful violation of any of the provisions of this subtitle as shall, in the discretion of the magistrate, justify such revocation.
In State v. Morgan, 393 N.J.Super. 411, 422-24, 923 A.2d 359 (App.Div.2007), we declined to address the issue because the suspension that had been imposed by the municipal judge was vacated by the Law Division judge, thus rendering the issue moot. We stated that, "at some point, if a suspension is imposed and not vacated, the issue will be presented in the appropriate context of a true case and controversy requiring this court's determination." Id. at 424, 923 A.2d 359. This is such a case. Defendant was found guilty in municipal court of reckless driving, N.J.S.A. 39:4-96. In addition to a fine and costs, the municipal judge imposed a forty-five day driver's license suspension pursuant to N.J.S.A. 39:5-31. Upon de novo review, see R. 3:23-8, defendant challenged her reckless driving conviction and also challenged the constitutionality of N.J.S.A. 39:5-31. The Law Division judge found no constitutional infirmity and again found defendant guilty of reckless driving. He imposed the same sentence that had been imposed by the trial court.
On appeal, defendant argues that the evidence was insufficient to find her guilty of reckless driving. She further argues that, if her conviction is sustained, the portion of her sentence imposing a forty-five day driver's license suspension should be vacated. She urges that N.J.S.A. 39:5-31 is antiquated and should be given no effect, and that it should be declared unconstitutional because it is vague, overbroad, provides insufficient notice to the public, and is capable of widely disparate application in that it gives judges unbridled discretion. We reject defendant's arguments and affirm.

I
At about 2:00 a.m. on August 3, 2007, defendant was driving north on Highway 34 in Aberdeen. She approached the intersection of Highway 34 and Lloyd Road, which is controlled by a traffic signal, which was red for Highway 34. A tractor trailer was stopped at the red light in the northbound lane, as was another vehicle behind it. Defendant approached at a high rate of speed and entered the left turn only lane in order to pass the two stopped vehicles. The light turned green for Highway 34 as defendant entered and went through the intersection, at which time she cut back into the travel lane and proceeded straight on Highway 34.
Aberdeen police officer Roger Peter was parked in a gas station at the intersection and witnessed the incident. He described it in his testimony substantially as we have. Further, he explained that, "[h]ad the light not turned green, it didn't appear *486 that she would have been able to stop, prior to entering the intersection." He added: "I don't believe she had any care for you know traffic coming either direction, you know. Or if the vehicle behind the tractor trailer was trying to go into that left turn lane there would have been an accident." The municipal judge and the Law Division judge found Peter's testimony credible.
Defendant did not dispute Peter's testimony. Indeed, she testified: "The reason why I went in front of that tractor trailer is because I wanted to get into that lane, I was in the other lane. That's why I went in front of it." She did not contend that she was planning to turn left and then changed her mind. She tacitly admitted that she used the left turn lane to pass the other vehicles at the intersection.
A person is guilty of reckless driving "who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property." N.J.S.A. 39:4-96. The offense does not require actual harm to persons or property, an accident, or a close call, but is complete upon operation of the vehicle in the manner prohibited by the statute. State v. Shoopman, 11 N.J. 333, 335, 94 A.2d 493 (1953).
After giving due, but not controlling, deference to the credibility finding of the municipal judge, the Law Division judge made independent findings of fact based on the municipal court record. See State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). The judge found
that she was operating her vehicle at too fast a rate of speed for those conditions, in the sense that the officer indicated if she hadn't swerved around those vehicles she would not have been able to stop at that particular location.
She was passing in the left hand turn lane, that's not an appropriate place to make a passing, and then cut back in the lane. A left hand turn lane is not a lane for passing vehicles, especially under these circumstances. If the light had not changed she would not have been able to stop according to the police officer. And I think that created a potentially dangerous situation. This was at an intersection, obviously when there's a left hand turn lane.
So therefore I'm satisfied that she is guilty of reckless driving in this particular case based upon the testimony of the police officer.
The evidence supports the judge's findings and his conclusion that defendant was guilty of reckless driving.

II
We first consider defendant's argument that N.J.S.A. 39:5-31 should be discarded because it is antiquated and inconsistent with the modern point system under the Motor Vehicle Code, by which drivers who accumulate a specified number of points within a specified time period are subject to administrative suspension of driving privileges. See N.J.S.A. 39:5-30 to -30.11; N.J.A.C. 13:19-10.1 to -10.9. In essence, defendant asks that we deem N.J.S.A. 39:5-31 to have been repealed by implication through the Legislature's enactment of the point system. In support of this argument, defendant points out that N.J.S.A. 39:5-31 traces its roots back to 1906 and has not been updated since 1953. The point system was put into effect on July 1, 1952 in accordance with the powers vested in the Director of the Division of Motor Vehicles through N.J.S.A. 39:5-30. William J. Dearden, Forty-Seventh Annual Report of the Director of the Div. of Motor Vehicles, N.J. Dep't of Law & Public Safety, *487 14-15 (1952); see also Allen v. Strelecki, 50 N.J. 410, 412, 236 A.2d 129 (1967) (describing the "Point System Regulation" adopted "[s]ome years ago" by the Director). The Legislature's first statutory authorization of the point system came in 1969. L. 1969, c. 261, § 2 (N.J.S.A. 39:5-30.3, now repealed); No Illegal Points, Citizens For Drivers Rights, Inc. v. Florio, 264 N.J.Super. 318, 324-25, 624 A.2d 981 (App.Div.), certif. denied, 134 N.J. 479, 634 A.2d 526 (1993).
When the point system was adopted, the Legislature left unchanged N.J.S.A. 39:5-31. Both provisions are part of the Motor Vehicle Code. Accordingly, they should be read together "as if they had been originally enacted as one section. Effect is to be given to each part, and they are to be interpreted so that they do not conflict." Norman J. Singer, 1A Sutherland Statutory Construction § 22:34 at 401-03 (6th rev. ed.2002) (footnotes omitted). In our view, the two provisions can harmoniously coexist, with each given effect.
Every motor vehicle violation carries appropriate punishment, which may include a fine, jail, or driver's license suspension. The sentence imposed must be appropriate to the offense and the offender. Certain moving violations also result in the assessment of points. When a sufficient number of points are accumulated within a specified time period, an administrative suspension is authorized. That occurs whether or not, in accumulating the points, the driver also accumulated some individual periods of suspension for the specific offenses. The two schemes do not conflict.
Sentencing on individual motor vehicle violations and the point system serve two separate purposes. The former represents appropriate punishment for the specific offense. The latter provides a method by which drivers who commit repeated moving violations within a short time frame are deemed dangerous to the public and are therefore removed from the highways for a period of time in order to provide rehabilitation and education before their driving privileges are restored. See No Illegal Points, supra, 264 N.J.Super. at 326, 624 A.2d 981 (noting "that the primary purpose of the point system was to provide remedial help for problem drivers, not to penalize them.").
Repeals by implication are disfavored, and "[e]very reasonable construction should be applied to avoid a finding of implied repealer." Twp. of Mahwah v. Bergen Co. Bd. of Taxation, 98 N.J. 268, 281, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). "A repeal by implication requires clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt." Id. at 280, 486 A.2d 818. No such intent can be found here, let alone one that is free from reasonable doubt. There is no basis upon which to conclude that the Legislature, by enacting the point system, intended to eliminate the authority of judges to impose driver's license suspensions in individual cases.

III
We now address defendant's challenge to the constitutionality of N.J.S.A. 39:5-31. We begin with the well-settled principle that the statute is presumed valid. LaManna v. Proformance Ins. Co., 184 N.J. 214, 223, 876 A.2d 785 (2005); State v. Fisher, 395 N.J.Super. 533, 543, 929 A.2d 1130 (App.Div.) (applying the presumption of validity to the Motor Vehicle Code), certif. denied, 192 N.J. 593, 934 A.2d 636 (2007). We will not declare a statute void "unless its repugnancy to the Constitution is clear beyond a reasonable doubt." LaManna, supra, 184 N.J. at 223, 876 A.2d 785; Fisher, supra, 395 N.J.Super. at 543, 929 A.2d 1130. The *488 burden is on the party challenging the statute's constitutionality to establish its unconstitutionality. State v. Jones, 346 N.J.Super. 391, 406, 788 A.2d 303 (App. Div.), certif. denied, 172 N.J. 181, 796 A.2d (2002).
Defendant argues that the statute does not provide fair notice to the public. According to defendant, this is because the reckless driving statute provides for a specific punishment, namely, for a first offense, imprisonment of not more than sixty days, a fine of $50 to $200, or both, and for a second or subsequent offense, imprisonment of not more than three months, a fine of $100 to $500, or both. N.J.S.A. 39:4-96. Defendant argues that because reckless driving has its own penalty provisions and because the reckless driving section is contained in Chapter 4 (TRAFFIC REGULATION) of Title 39, a member of the public charged with reckless driving would not be on fair notice of the possible additional punishment of a driver's license suspension by virtue of N.J.S.A. 39:5-31, which is contained in a different part of the motor vehicle code, namely Chapter 5 (ENFORCEMENT AND PROCEDURE). Accordingly, defendant asserts a due process violation. We do not agree.
"[E]very person is conclusively presumed to know the law, statutory and otherwise." Graham v. N.J. Real Estate Comm'n, 217 N.J.Super. 130, 138, 524 A.2d 1321 (App.Div.1987). The presence of N.J.S.A. 39:5-31 in a published law of this State, within the Motor Vehicle Code, under a chapter entitled "ENFORCEMENT AND PROCEDURE," is not hidden from the public. Its location within the Motor Vehicle Code is not obscure.
Defendant makes another argument with regard to notice of this potential additional punishment. She argues that because N.J.S.A. 39:5-31 applies to all violations in Subtitle 1 (MOTOR VEHICLE AND TRAFFIC LAWS) of the Motor Vehicle Code, and because loss of driving privileges is a consequence of magnitude, if we determine that N.J.S.A. 39:5-31 remains viable, all indigent defendants charged with any motor vehicle violation, large or small, would have to be assigned public defenders.
We first note that defendant was pro se in municipal court and was apparently properly advised of her right to counsel, which she apparently declined. We express some uncertainty because we have not been provided with transcripts of defendant's several municipal court appearances prior to her trial date. On that date, she acknowledged that she had been there "several times and [was] proceeding ... without an attorney." We are confident that lack of counsel, or appropriate advice regarding the right to counsel, is not an issue in this case because, in the Law Division, where pro bono counsel was assigned, counsel expressly waived any argument based upon lack of counsel or inadequate advice.
Although not an issue in this case, we offer these comments on the subject. There can be no doubt that loss of driving privileges constitutes a consequence of magnitude. State v. Hamm, 121 N.J. 109, 124, 577 A.2d 1259 (1990), cert. denied, 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991); R. 7:3-2(b); Guidelines For Determination Of Consequence Of Magnitude, Pressler, Current N.J. Court Rules, Appendix to Part VII at 2241 (2009). An indigent defendant facing such a consequence is entitled to the assignment of a municipal public defender. R. 7:3-2(b). We note, however, that provisions other than N.J.S.A. 39:5-31 potentially expose many individuals charged with motor vehicle violations to consequences of magnitude. For example, individuals charged *489 with reckless driving, such as defendant, face a potential jail sentence by virtue of the specific sentencing provisions in N.J.S.A. 39:4-96. Further, under the General Penalty provision applicable to Chapter 4 of the Motor Vehicle Code, individuals charged with any offense under that chapter for which no specific penalty is provided are subject to a jail term not to exceed fifteen days. N.J.S.A. 39:4-203. Therefore, there is nothing unique about N.J.S.A. 39:5-31 within the Motor Vehicle Code that would render its potential sentencing provision particularly onerous in the administration of our municipal court system.
Indeed, in the seminal case dealing with the right of an indigent defendant to counsel when facing a consequence of magnitude, our Supreme Court has provided a procedure by which the right will be protected when not honored at the outset. Rodriguez v. Rosenblatt, 58 N.J. 281, 295, 277 A.2d 216 (1971). If the appropriate tender or assignment of counsel was not made before trial and, during the course of trial, it appears to the municipal judge that "actual imprisonment or other consequence of magnitude looms appropriate... despite the preindications to the contrary, the defendant should be given the option of starting anew with suitable safeguards including, where necessary, trial before a substituted municipal judge." Ibid.
Defendant argues that N.J.S.A. 39:5-31 is unconstitutionally vague or overbroad. The United States Supreme Court has outlined the process for determination of the issue:
In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.
[Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982) (footnotes omitted). Cited with approval by State v. Saunders, 302 N.J.Super. 509, 517, 695 A.2d 722 (App.Div.), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997).]
N.J.S.A. 39:5-31 is not overbroad because having a license to drive is not a constitutionally protected right. While a license to drive is nearly a necessity and its deprivation is a "consequence of magnitude," there is no constitutionally protected right to drive. Hamm, supra, 121 N.J. at 124, 577 A.2d 1259. Thus, the overbreadth argument lacks merit.
We next consider whether the statute is unconstitutionally vague. Vague laws are unenforceable under the federal and state constitutions. See U.S. Const. amend. V; N.J. Const. art. I, ¶ 1. The vagueness doctrine "is grounded in concepts of fairness, and `requires that a law be sufficiently clear to apprise an ordinary person of its reach.'" State v. Rogers, 308 N.J.Super. 59, 64, 705 A.2d 397 (App. Div.) (quoting In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 500, 561 A.2d 1160 (1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990)), certif. *490 denied, 156 N.J. 385, 718 A.2d 1214 (1998). The law must be "sufficiently clear and precise so that the ordinary person has notice and an adequate warning of the prohibited conduct." Binkowski v. State, 322 N.J.Super. 359, 381, 731 A.2d 64 (App. Div.1999).
However, "`[s]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.'" State v. Emmons, 397 N.J.Super. 112, 124, 936 A.2d 459 (App.Div.2007) (quoting Parker v. Levy, 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439, 458 (1974)), certif. denied, 195 N.J. 421, 949 A.2d 849 (2008). Thus, in order to succeed on a facial challenge of vagueness, "`the complainant must demonstrate that the law is impermissibly vague in all applications.'" Binkowski, supra, 322 N.J.Super. at 380-81, 731 A.2d 64 (quoting Hoffman Estates, supra, 455 U.S. at 497, 102 S.Ct. at 1193, 71 L.Ed.2d at 371). In other words, a law is facially vague if "there is no conduct that it proscribes with sufficient certainty." State v. Cameron, 100 N.J. 586, 593, 498 A.2d 1217 (1985). A law will "be deemed unconstitutionally vague as violative of due process if individuals of ordinary intelligence must necessarily guess at its meaning and differ as to its application." State v. N.G., 381 N.J.Super. 352, 360, 886 A.2d 186 (App.Div.2005) (internal quotations omitted).
Applying these principles, we do not find N.J.S.A. 39:5-31 facially vague. It applies to a person committing a willful violation of the Motor Vehicle Code. The law is sufficiently clear so that different people would not guess at its meaning, and people would not be unsure as to whether or not their conduct would fall under its provisions. So long as the violation of the Motor Vehicle Code is "willful," the statute may apply.
The second possibility is that the statute is vague as applied to defendant. A statute is unconstitutionally vague as applied if it "does not with sufficient clarity prohibit the conduct against which it [is] sought to be enforced." Cameron, supra, 100 N.J. at 593, 498 A.2d 1217. "A party claiming that a law is vague as applied may challenge the law only in respect to his or her own conduct." State v. Walker, 385 N.J.Super. 388, 403, 897 A.2d 411 (App.Div.), certif. denied, 187 N.J. 83, 899 A.2d 305 (2006).
We cannot conclude that the statute is vague as applied to defendant. Defendant must show that the statute is unclear with respect to her conviction for reckless driving, and not other hypothetical situations involving other violations of the Motor Vehicle Code. While the term "willful" is not defined in N.J.S.A. 39:5-31, it is an element of the offense of reckless driving itself. See N.J.S.A. 39:4-96; State v. Donley, 85 N.J.Super. 127, 133, 204 A.2d 149 (App.Div.1964). Thus, as part of defendant's conviction for reckless driving, the State proved a willful violation as an element of that offense.[1]
Defendant also argues that the statute gives the judge unlimited discretion in applying the sentence of revocation of a license, without providing proper guidelines as to how and when this sentence should be used. In making this argument, defendant relies on State v. Brimage, 153 N.J. 1, 706 A.2d 1096 (1998). In *491 Brimage, the Court addressed whether the Attorney General's 1992 Plea-Bargaining Guidelines for violations of the Comprehensive Drug Reform Act of 1987 (CDRA), N.J.S.A. 2C:35-1 to 36A-1, were adequate to satisfy the separation of powers doctrine and to meet the statutory goals of uniformity in sentencing. Id. at 3-5, 706 A.2d 1096. Under N.J.S.A. 2C:35-12 (Section 12 of the CDRA), a prosecutor may, through a negotiated plea agreement or post-conviction agreement with a defendant, waive the mandatory minimum sentence specified for any offense under the CDRA. Id. at 3, 706 A.2d 1096. The Court noted that in State v. Vasquez, 129 N.J. 189, 195-96, 609 A.2d 29 (1992), it held that prosecutorial discretion under Section 12 must be subject to judicial review for arbitrary and capricious action. Ibid. In order to facilitate this review, prosecutors had to adhere to written guidelines governing plea offers and state on the record their reasons for waiving or not waiving the parole disqualifier in any case. Id. at 3-4, 609 A.2d 29 (citing Vasquez, supra, 129 N.J. at 195-96, 609 A.2d 29).
Thus, the Attorney General promulgated plea agreement guidelines. Id. at 4, 609 A.2d 29. The guidelines prescribed statewide minimum plea offers but also directed each county prosecutor's office to adopt its own written plea agreement policy which could include standard plea offers that are more stringent than the statewide minimum. Ibid.
In holding that new guidelines, to be followed by all counties, needed to be promulgated, the Court noted that disparate sentencing fails to comport with the Legislature's intent in enacting the Code of Criminal Justice that there be uniformity in sentencing. Id. at 19, 706 A.2d 1096. To meet this goal, "the Code offers specific sentencing instruction to judges, including detailed guidelines and rules." Id. at 20, 706 A.2d 1096. "While the Code still affords discretion to individual judges in deciding among different factors and choosing a sentence within a permissible range, that discretion is guided by specific standards which apply on a uniform, statewide basis." Id. at 21, 706 A.2d 1096.
The Court further noted that, by permitting each county to adopt its own standard plea offers, the guidelines did not satisfy the requirements outlined in Vasquez:
The intercounty disparity authorized by the Attorney General's Guidelines ... violates the goals of uniformity in sentencing and, thus, not only fails on statutory grounds, but also threatens the balance between prosecutorial and judicial discretion that is required under Vasquez, supra, 129 N.J. 189, 609 A.2d 29. The Guidelines fail to appropriately channel prosecutorial discretion, thus leading to arbitrary and unreviewable differences between different localities.
[Id. at 22-23, 609 A.2d 29.]
Thus, "[j]ust as with the sentencing guidelines under the Code, which guide judicial sentencing discretion on a statewide basis, prosecutors must be guided by specific, universal standards in their waiver of mandatory minimum sentences under the CDRA." Id. at 23, 609 A.2d 29.
In our view, Brimage is not applicable here. In Brimage, the Court was concerned with how prosecutorial discretion in crafting plea agreements would lead to decisions unreviewable by the judiciary. In contrast, defendant's sentence is subject to judicial appellate review under an abuse of discretion standard.
As we have stated, there is no constitutionally protected right to a driver's license. Defendant's argument that municipal judges are given too much discretion in applying N.J.S.A. 39:5-31 is not *492 of constitutional dimension. Our Supreme Court has held that "it is an established rule of statutory construction that a statute written in general terms will be given prospective application to situations unknown or nonexistent at the time of its enactment which are within its general purview and scope where the language fairly includes them." Safeway Trails, Inc. v. Furman, 41 N.J. 467, 477, 197 A.2d 366, cert. denied, 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84 (1964). Therefore, defendant's sentence of a forty-five day license suspension for reckless driving, an offense that did not exist when the initial version of N.J.S.A. 39:5-31 was enacted, must be reviewed for an abuse of discretion by the trial court. A reviewing court will modify a sentence only when the application of the facts to the law is so clearly an error of judgment that it "shocks the judicial conscience." State v. Roth, 95 N.J. 334, 364, 471 A.2d 370 (1984).
In imposing the driver's license suspension, the Law Division judge, after noting that defendant willfully violated the reckless driving statute, relied upon defendant's extensive driving record as the basis for suspension. The judge noted that although defendant did not currently have any points against her driving record, she had committed "a number of traffic offenses dating back to 1990, including improper passing, failing to observe traffic light, speeding, failure to yield the right of way, obstructing the passage of other vehicles, unsafe operation of a motor vehicle, and careless driving." The judge concluded that "suspension is appropriate in light of her driving in this incident, and her past driving infractions."
We appreciate defendant's concern that no guidelines or standards are provided, nor is any limit set, in N.J.S.A. 39:5-31. According to defendant, judges could impose any length of suspension they choose under the statute.[2] Such decisions by a municipal judge would be subject to sentencing anew in the Law Division, which would be an appropriate forum in the first instance to correct any arbitrary sentence. In Morgan, for example, the Law Division judge did not re-impose the driver's license suspension. Suspensions imposed pursuant to N.J.S.A. 39:5-31 by the Law Division judge, as with all sentencings, will be subject to appellate review under the abuse of discretion standard. We realize that the standard for setting aside a sentence imposed by a trial court is a high one, but we are confident that the appellate process will effectively serve to correct any clearly excessive impositions.
It would indeed be sensible for the Legislature to consider amending N.J.S.A. 39:5-31 to include limitations and guidelines. This would be consonant with the Legislature's avowed purpose of *493 achieving uniformity and predictability in sentencing in the criminal sphere. Absent constitutional infirmity, this remains a legislative decision. We have found no such infirmity, and we therefore apply the law as it exists.
In the absence of statutory standards, we offer this guidance to municipal and Law Division judges. In deciding whether to invoke the authority of N.J.S.A. 39:5-31 and, if so, in determining the length of an appropriate suspension, consideration should be given to factors such as those discussed in Cresse v. Parsekian, 81 N.J.Super. 536, 549, 196 A.2d 256 (App.Div.1963), aff'd, 43 N.J. 326, 204 A.2d 348 (1964), and, to the extent relevant, to the aggravating and mitigating factors set forth in the Code of Criminal Justice, N.J.S.A. 2C:44-1a and b. These would include, for example, the nature and circumstances of the present offense and whether it was particularly egregious; any harm inflicted on others; the defendant's driving record, considering how long the defendant has been a licensed driver and the seriousness, frequency, and timing of prior infractions; the likelihood of committing further motor vehicle violations; the need for deterrence; whether there were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense; whether this was the defendant's first violation or whether he or she had gone for a substantial period of time without violations prior to the present offense; whether the defendant's character and attitude indicate that he or she is unlikely to commit another motor vehicle violation (or at least a willful one); and the like. With respect to the length of the suspension, courts may also consider the length of suspensions authorized for specific offenses in the Motor Vehicle Code as a basis for comparison and proportionality.
Against this backdrop, we consider the judge's determination in this case to invoke the authority of N.J.S.A. 39:5-31. He did so based upon relevant considerations (the willful violation and defendant's prior driving record). The judge did not consider any irrelevant factors. His decision to invoke the section was within his discretionary authority.
We now turn to consideration of the appropriateness of the length of the suspension. The judge's decision was based on defendant's extensive prior driving record. Although she did not presently have any points and apparently never exceeded the allowable number of points within a given time frame to incur an administrative suspension, her driving history was poor. It included a number of moving violations, some of which contained characteristics similar to the present offense (speeding, failing to observe a traffic light, and improper passing). Although defendant's prior history dated back to 1990, some of the offenses were more recent. While the judge did not expressly articulate it, his findings implied that he considered the likelihood that defendant would commit future motor vehicle violations and that there was a need for deterrence.
Reckless driving is deemed a very serious motor vehicle violation. It results in the assessment of five points on a driver's record. N.J.A.C. 13:19-10.1, in a scheme in which the accumulation of twelve points within two years results in suspension, N.J.A.C. 13:19-10.2. Considering the seriousness of the offense and the suspension periods authorized for other serious motor vehicle offenses, see, e.g., N.J.S.A. 39:4-129 (person convicted of leaving the scene of accident involving injury or death subject to one-year suspension for first offense and permanent forfeiture for subsequent offenses, and if only property damage involved, *494 six-month suspension for first offense and one-year suspension for subsequent offenses); N.J.S.A. 39:4-50 (person convicted of driving while intoxicated subject to suspensions ranging from three months to ten years),[3] and considering the aggravating factors and absence of mitigating factors, our conscience is not shocked by the forty-five day suspension. That suspension constituted an appropriate exercise of discretion, with which we will not interfere.
We add one final comment. Defendant argues, as did the defendant in Morgan, that some municipal courts use N.J.S.A. 39:5-31 as a "trial tax" to coerce pleas. See Morgan, supra, 393 N.J.Super. at 423, 923 A.2d 359. Defendant also contends that some municipal judges routinely invoke the authority of the section and impose suspensions in certain categories of offenses as a matter of standard policy. Such practices would, of course, be improper. There is nothing in this record to support these contentions. A review of whether any such practices are being followed might well be conducted by the Conference of Presiding Municipal Judges or the Municipal Court Practice Committee. Or, an affected defendant might develop an appropriate record upon which such claims could be evaluated within the context of his or her case. But on the record before us, such unsubstantiated contentions can play no part in our decision.
Affirmed.
NOTES
[1] We do not suggest that N.J.S.A. 39:5-31 applies only to violations for which willfulness is an element of the offense. Because willful conduct is an element of reckless driving, it is not necessary for us in this opinion to address notice and proof issues pertaining to willfulness that may arise with other violations.
[2] As part of her vagueness argument, defendant contends that N.J.S.A. 39:5-31 authorizes only "revocation" of a license, which, by dictionary definition, involves a permanent deprivation, as opposed to "suspension," which involves a temporary deprivation. Notwithstanding these common usage distinctions, within the Motor Vehicle Code and the regulations adopted pursuant to it, the terms have been used interchangeably for many years. For example, N.J.A.C. 13:21-9.4(c) provides that "the term `suspension of driving privilege' includes every suspension, revocation, prohibition or refusal of any privilege to operate a motor vehicle in this State." Under the Motor Vehicle Code, the revocation of a license is not permanent, because a license that has been revoked can be restored. N.J.S.A. 39:3-10a. Indeed, under that section, the procedure and fee for restoration is the same for any license "which has been suspended or revoked." The distinction proffered by defendant is purely semantic. It is of no legal significance in this context. N.J.S.A. 39:5-31 should be read to authorize the suspension or revocation of a driver's license.
[3] See also N.J.S.A. 39:5-30b (giving the Director discretion to suspend license for no more than three years if the person's license has been suspended three times in a three-year period); N.J.S.A. 39:5-30.8 (directing the Director to suspend license for period of thirty to 180 days of any person who accumulates twelve or more points in a two-year period).