923 A.2d 359 (2007)
393 N.J. Super. 411
STATE of New Jersey, Plaintiff-Respondent,
v.
Robert C. MORGAN, JR., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 2007.
Decided June 6, 2007.
*360 Damiano M. Fracasso argued the cause for appellant.
Francis A. Koch, Assistant Prosecutor, argued the cause for respondent (David J. Weaver, Sussex County Prosecutor, attorney; Robin M. Lawrie, Assistant Prosecutor, on the brief).
Before Judges PARKER, C.S. FISHER and MESSANO.
The opinion of this court was delivered by
MESSANO, J.S.C. (temporarily assigned).
Defendant Robert Morgan appeals from a judgment of conviction entered on June 30, 2006, after de novo review by the Law Division, finding him guilty of speeding, in violation of N.J.S.A. 39:4-98. The testimony before the Montague Township Municipal Court revealed the following salient facts.
On the afternoon of May 19, 2005, Sussex County Sheriff's Officer Samantha Shpiruk was on patrol driving northbound on Route 23 in Montague Township. She observed a black Corvette proceeding *361 southbound at a high rate of speed. Shpiruk estimated, and then confirmed through her Doppler radar unit, that it was traveling at sixty-six miles per hour.
Shpiruk was asked on direct examination,
Q. What is the speed limit?
A. 40 miles per hour.
Q. Is there any stretch of that area that you saw him operating thatin which that speed is permitted?
.....
Q. (cont'd.) 66 miles an hour?
A. No, sir.
Shpiruk turned her vehicle around in order to stop the Corvette, and, in doing so, lost sight of it temporarily. When she next saw the car, she estimated it was going 45 miles per hour and confirmed this speed on her radar unit. Shpiruk activated her car lights and stopped defendant's vehicle. She issued a summons to him for a violation of N.J.S.A. 39:4-98, specifically driving sixty-six miles per hour in a forty miles per hour zone. She was again asked by the prosecutor,
Q. All right, and what was the speed limit at that area?
A. 40.
Q. All right. So he was still in excess of the speed. Is that correct?
A. Correct.
On cross-examination, Shpiruk admitted that she lost sight of the black Corvette for some thirty seconds. She also acknowledged that she did not know if any property owner along that particular stretch of Route 23 also owned a black Corvette. Shpiruk nevertheless was sure the car she stopped was the car she initially clocked traveling at sixty-six miles per hour because it was the "only black Corvette on that stretch of roadway" and because there were "no turn-offs" on that part of the road, which Shpiruk knew because she was "from around there."
The State rested after Shpiruk's testimony and defendant produced no witnesses. In summation, relying upon State v. Miller, 58 N.J.Super. 538, 156 A.2d 750 (Law Div.1959), defendant sought a judgment of acquittal contending the State had failed to establish what was the lawful rate of speed on that particular portion of Route 23. Noting "[t]here was testimony as to the speed [limit] on the highway," the judge found defendant was "in fact traveling at 66 miles per hour in a 40 mile an hour zone" and was guilty of violating N.J.S.A. 39:4-98. After reviewing the defendant's driving record, which included a number of prior violations, the municipal court judge fined defendant $400, imposed $39 in court costs and suspended defendant's license for sixty days.
Defense counsel strenuously objected to the suspension of defendant's license. The following exchange took place:
[Defense counsel]: Your Honor, what is the legal basis for doing so?
[The Judge]: The legal basis is your client has speeding tickets virtually all his life, continues to have speeding tickets and he needs to learn a lesson as to how to drive his vehicle.
[Defense counsel]: That may be the case, Your Honor, but the Legislature doesn't authorize you to suspend a license under that circumstance.
[The Judge]: The Legislature authorizes me to suspend his license for driving at 66 in a 40.
[Defense counsel]: Where does it say that?
[The Judge]: That's the order of the Court.
Defendant appealed to the Law Division and immediately requested a stay of the license suspension which was granted. After *362 a de novo review of the record, the Law Division judge, relying in large measure upon our holding in State v. Craig, 150 N.J.Super. 513, 376 A.2d 193 (App.Div. 1977), affirmed defendant's conviction and imposed the same monetary fine and penalty; he vacated the suspension of defendant's license.[1] This appeal followed.
Defendant raises the following points for our consideration:
POINT I
THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THIS DEFENDANT VIOLATED N.J.S.A. 39:4-98.
POINT II

N.J.S.A. 39:5-31 IS UNCONSTITUTIONAL.
We have carefully considered these arguments in light of the record and appropriate legal standards. We affirm.
Defendant contends 1) that the State failed to establish what the lawful speed on Route 23 was at the point he allegedly committed the offense, 2) that Shpiruk's testimony was not credible or, if believed, actually exonerated defendant, and 3) that the State failed to establish defendant was the operator of the speeding vehicle.
Defendant correctly notes that N.J.S.A. 39:4-98 does not proscribe any conduct whatsoever. When read together with N.J.S.A. 39:4-99, however, the elements of the prima facie unlawful conduct, "speeding," are defined.[2]N.J.S.A. 39:4-99 provides,
It shall be prima facie unlawful for a person to exceed any of the foregoing speed limitations or any speed limitation in effect as established by authority of [N.J.S.A. 39:4-98].
In every charge of violation of [N.J.S.A. 39:4-98], the complaint and the summons or notice to appear, shall specify the speed at which the defendant is alleged to have driven and the speed which this article declares shall be prima facie lawful at the time and place of the alleged violation.
N.J.S.A. 39:4-98 provides,
[E]xcept in those instances where a lower speed is specified in this chapter, it shall be prima facie lawful for the driver of a vehicle to drive it at a speed not exceeding the following:
a. Twenty-five miles per hour, when passing through a school zone during recess, when the presence of children is clearly visible from the roadway, or while children are going to or leaving school, during opening or closing hours;
b. (1) Twenty-five miles per hour in any business or residential district;
(2) Thirty-five miles per hour in any suburban business or residential district;
c. Fifty miles per hour in all other locations, except as otherwise provided in the "Sixty-Five MPH Speed Limit Implementation Act"....

*363 Whenever it shall be determined upon the basis of an engineering and traffic investigation that any speed hereinbefore set forth is greater or less than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, the Commissioner of Transportation, with reference to State highways, may by regulation and municipal or county authorities, with reference to highways under their jurisdiction, may by ordinance, in the case of municipal authorities, or by ordinance or resolution, in the case of county authorities, subject to the approval of the Commissioner of Transportation ... designate a reasonable and safe speed limit thereat which ... shall be prima facie lawful at all times or at such times as may be determined, when appropriate signs giving notice thereof are erected at such intersection, or other place or part of the highway. Appropriate signs giving notice of the speed limits authorized under the provisions of paragraph (1) of subsection b. and subsection c. of this section may be erected if the commissioner or the municipal or county authorities, as the case may be, so determine they are necessary. Appropriate signs giving notice of the speed limits authorized under the provisions of subsection a. and paragraph (2) of subsection b. of this section shall be erected by the commissioner or the municipal or county authorities, as appropriate.[3]
Defendant contends that the State failed to demonstrate what the lawful speed was along that portion of Route 23 because Shpiruk's testimony, which was the only evidence adduced on the issue, was legally insufficient to meet the State's burden.
In Miller, the defendant was convicted of driving at a speed of thirty-six miles per hour in a twenty-five miles per hour zone. 58 N.J.Super. at 539, 156 A.2d 750. Defendant denied the speed limit in the zone was twenty-five miles per hour. Ibid. At trial, the State presented "no evidence establishing that this was a residence or business district within the meaning of N.J.S.A. 39:1-1 and N.J.S.A. 39:4-98 and 99," or "any evidence that any speed limit had been established especially for this area by ordinance or regulation." Id. at 540, 156 A.2d 750. The State did produce "evidence that signs showing the number 25 had been erected, but no proof of the authority by which they were placed as required by the statute." Ibid.
On appeal, the Law Division noted "[i]n the absence of proof showing that another or lower speed limit applies in the district, the presumption must be that the 50 m.p.h. limit applies." Ibid. Proof of a sign in the area was insufficient because "the sign itself does not set the speed limit." Ibid. Since there were "many unauthorized signs in the State which may serve as a warning but have no effect in creating an offense," the defendant could not be found guilty on that evidence alone. Ibid.
The court concluded
The offense of exceeding a speed limit of less than 50 m.p.h. cannot be charged without alleging that it occurred in a business or residence district or in a district for which the stated speed limit has been established in conformity with the statute .... The burden of proof is upon the State to establish all elements of the offense.
[Ibid.] *364 Absent proof as to the nature of the area and absent proof of any regulation, ordinance or resolution setting the speed limit at less than fifty miles per hour, the defendant was entitled to be acquitted. Id. at 541, 156 A.2d 750.
In Craig, we confronted a similar situation. There, defendant was charged with driving forty miles per hour in a twenty-five miles per hour zone. 150 N.J.Super. at 514, 376 A.2d 193. The police officer testified as to the lawful speed at the point of the offense. Ibid. On appeal, the defendant argued that the State "failed to prove the speed limit at the place where the speeding took place," because it failed to "introduce evidence relating to the character and type of the zone." Id. at 515, 376 A.2d 193. In affirming defendant's conviction, however, we concluded that when a "police officer testifies under oath to the speed limit," and "that testimony remains uncontroverted and is believed," it "carries with it the presumption, rebuttable though it may be, that that speed limit was legally ordained." Ibid.; see also State v. Cooper, 129 N.J.Super. 229, 232, 322 A.2d 836 (App.Div.) (holding evidence of a traffic control device creates a presumption that it was official and properly placed at that location), certif. denied, 66 N.J. 329, 331 A.2d 28 (1974).
In Craig, we distinguished our earlier decision in State v. Tropea, 142 N.J.Super. 288, 361 A.2d 111 (App.Div.1976), recognizing that cross-petitions for certification had been granted and were pending in that case. Craig, supra, 150 N.J.Super. at 515, 376 A.2d 193.[4] We noted that unlike Tropea, where "`[n]o evidence of the applicable speed limit was offered,'" "here [] there was some hard evidence"the officer's testimony"as to the speed limit." Ibid. (quoting Tropea, supra, 142 N.J.Super. at 290, 361 A.2d 111).
The Supreme Court's decision in Tropea sets forth the full factual scenario of that case in detail. Defendant was charged with driving forty-four miles per hour in a twenty-five miles per hour zone. State v. Tropea, 78 N.J. 309, 311, 394 A.2d 355 (1978). The police, operating a radar device, timed the defendant speeding and issued a summons to him. Ibid. The officer who testified at trial did not offer any testimony as to the speed limit in the area where the offense occurred. Ibid. At the conclusion of the State's case, defendant moved for acquittal based upon the insufficiency of evidence, but the motion was denied. Id. at 311-12, 394 A.2d 355.
The defendant then testified that he was "trying to keep the car at twenty-five miles per hour," and was driving at that speed when stopped by the police. Id. at 312, 394 A.2d 355. At the conclusion of his testimony, defendant again moved for acquittal. This, too, was denied, and the municipal court judge found him guilty. Ibid. On de novo review on appeal, the court found that defendant's attempt to maintain a speed of twenty-five miles per hour was evidence of his knowledge of the applicable speed limit, and affirmed his conviction. Ibid. We deemed that evidence to be insufficient, but remanded the matter for a new trial. Id. at 311, 394 A.2d 355.
After reviewing the evidence, the Court noted,
As the Appellate Division observed, these proofs fell far short of discharging the State's obligation to establish the applicable speed limit. So insubstantial is the State's argument on this point that we need dwell on it only long enough to observe that there is nothing *365 in defendant's assertion that he was making a conscious effort to maintain his speed at 25 miles per hour which in any way served to establish the speed limit. Furthermore, nothing in the record suggests that either the municipal court or county court judge took judicial noticeor, indeed, any other kind of noticeof any facts indicating that the area in question was residential in character.
[Id. at 312-13, 394 A.2d 355.]
Since the State failed to "offer [ ] any evidence of the applicable speed limit," the Court affirmed our earlier reversal of the defendant's conviction.[5]Id. at 313, 394 A.2d 355; see also, State v. Ring, 85 N.J.Super. 341, 342, 204 A.2d 716 (App. Div.1964) (reversing defendant's speeding conviction where no proof of lawful speed was introduced), certif. denied, 44 N.J. 407, 209 A.2d 142, cert. denied, 382 U.S. 812, 86 S.Ct. 24, 15 L.Ed.2d 60 (1965).
Returning to the case at hand, we determine it is factually distinguishable from Tropea, Ring, and Miller all of which determined that absent any proof of the lawful speed limit at a particular location, a defendant's conviction for violating N.J.S.A. 39:4-98 and 4-99 cannot stand. We accept that in such circumstances, the holdings in those cases have continued vitality and would determine the outcome of this appeal. However, in this case, there was evidence, Officer Shpiruk's testimony, which was essentially unchallenged, that the lawful speed limit was forty miles per hour. We, therefore, take this opportunity to reaffirm our holding in Craig to this extent"sworn testimony from a police officer relating the speed limit in a zone in the municipality in which [s]he is employed," 150 N.J.Super. at 515, 376 A.2d 193, if admissible and if believed, may be sufficient proof of the lawful speed limit in the area in question.[6] If persuaded by such testimony, the court need not require the State to prove that fact through the introduction of a certified copy of an ordinance or regulation. To the extent Miller holds otherwise, we disapprove it.
Although we reaffirm Craig's general approach to the issue, we reject the suggestion that the officer's testimony creates a "rebuttable presumption" of the lawful speed in the area. In the absence of any specific statutory language, it has been noted that "[c]ourts are generally reluctant to create presumptions." Biunno, N.J. Rules of Evidence, comment 1 on N.J.R.E. 301 (2007). Moreover, in the thirty years since Craig was decided, we have frequently limited the scope of statutory presumptions in motor vehicle and criminal cases. See State v. Walten, 241 N.J.Super. 529, 534-35, 575 A.2d 529 (App. Div.1990) (construing the statutory presumption contained in N.J.S.A. 39:4-129(e)leaving the scene of an accident to allow only a permissible inference of defendant's knowledge of the accident); State v. Bolton, 230 N.J.Super. 476, 480-81, 553 A.2d 881 (App.Div.1989) (construing the statutory presumption in N.J.S.A. *366 2C:39-2a to permit only an inference for the jury's consideration); State v. McCandless, 190 N.J.Super. 75, 81-82, 461 A.2d 1205 (App.Div.)(construing the statutory presumption in N.J.S.A. 2C:39-2b to permit only an inference), certif. denied, 95 N.J. 210, 470 A.2d 428 (1983). Additionally, N.J.R.E. 303, adopted since Craig was decided, significantly limits the effect of any statutory presumption in a criminal case.
In this case, however, where defendant did not object to the officer's testimony as to the lawful speed limit, the judge was entitled to give that testimony such weight as he deemed appropriate and was permitted to infer from that testimony the speed limit was "legally ordained." Craig, supra, 150 N.J.Super. at 515, 376 A.2d 193. Although defendant vigorously cross-examined Shpiruk at trial about the operation and calibration of her radar device, and her ability to observe defendant's vehicle, he did not pose a single question relative to the lawful speed limit in the area, the nature of the properties fronting that portion of the road, or whether any signs designating the speed limit were posted. In short, there was not any evidence adduced on cross-examination that rebutted the testimony of the officer as to the lawful speed in the area. Defendant did not introduce any contrary evidence of his own. As such, we reject defendant's argument that the State's evidence as to the lawful speed limit along that portion of Route 23 was insufficient to sustain his conviction.
Defendant's two remaining issues on this point require only brief comment. Defendant contends that Shpiruk's testimony regarding the relative speeds of the vehicles, and the distances and time required to turn her vehicle around and apprehend defendant, defy "the laws of physics" and are not credible. He also asserts that there was a reasonable doubt that defendant's vehicle was in fact the speeding black Corvette because the officer lost sight of the car for a period of time.
It is well-recognized that it is "improper for [an appellate court] to engage in an independent assessment of the evidence as if it were the court of first instance." State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999). Rather, "[a]ppellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." Id. at 474, 724 A.2d 234. We conclude, therefore, that the determinations reached by the municipal court judge and the Law Division judge are entitled to that deference and find no basis to disturb those conclusions.
We turn now to defendant's second point in which he urges that we hold N.J.S.A. 39:5-31 to be unconstitutional. Though the municipal court judge did not cite this portion of the statute as the basis for suspending defendant's license, the State acknowledges that it was by arguing the suspension was justified under the statute. The State also counters by arguing, in the first instance, defendant's challenge is moot since the Law Division judge vacated any license suspension.
Defendant argues the statute is archaic and capable of such disparate application as to render it unconstitutional. It provides,
The director or any magistrate before whom any hearing under this subtitle is had may revoke the license of any person to drive a motor vehicle, when such person shall have been guilty of such willful violation of any of the provisions of this subtitle as shall, in the discretion of the magistrate, justify such revocation.

*367 [N.J.S.A. 39:5-31.]
He contends that the statute provides only for the revocation, not the suspension, of a driver's license. Moreover, if read to apply to suspensions, the unbridled discretion the statute vests in a municipal court judge invites significant sentencing disparity between those courts where the judge utilizes the statute on a regular basis, and those where the statute is never employed.
While defendant has raised significant issues that create concern in our minds whether this provision of the motor vehicle laws is entitled to continued vitality, we decline to address the issue because it is moot. Defendant's license suspension was vacated by the Law Division, and, thus, our decision can have no "practical effect on [an] existing controversy." Greenfield v. N.J. Dept. of Corr., 382 N.J.Super. 254, 258, 888 A.2d 507 (App.Div.2006).
Defendant argues we should nonetheless consider the challenge he raises because "the underlying legal issue" is "`one of substantial importance, likely to recur, but evading review.'" Coyle v. Bd. of Chosen Freeholders, 170 N.J. 260, 263, 787 A.2d 881 (2002) (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330, 676 A.2d 1065 (1996)). At oral argument, defendant likened suspensions imposed pursuant to the statute to a "trial tax"an enhanced penalty imposed upon those who choose to challenge their summonses at trial rather than plead guiltyand contended that certain municipal court judges routinely extract such a price in their particular courtrooms.
Penalizing a defendant for asserting his constitutional right to a trial is clearly inappropriate and we would condemn any court's exercise of discretion in a manner that would achieve such an unjust result. See Curry v. N.J. State Parole Bd., 309 N.J.Super. 66, 72, 706 A.2d 769 (App.Div. 1998) (holding defendant may not be penalized for exercising his right to appeal by removing jail credits earned prior to successful appeal and subsequent re-conviction). However, as we noted at oral argument, there is nothing in the record before us that would support a determination that the statute is being used as defendant argues.[7]
Furthermore, we find no reason to conclude the issue is likely to evade review in the future. A defendant is free to raise the question of N.J.S.A. 39:5-31's continued constitutionality in both the municipal court and the Law Division as appropriate, and, we assume, at some point, if a suspension is imposed and not vacated, the issue will be presented in the appropriate context of a true case and controversy requiring this court's determination.
In sum, we agree with the State that the issue presented in defendant's second point is moot, and we decline the invitation to consider whether N.J.S.A. 39:5-31 is unconstitutional.
Affirmed.
NOTES
[1] The Law Division judge reserved decision on the appeal at the time it was argued. Two weeks later, he entered an order affirming the conviction and modifying the sentence. The order does not specify any reason for his decision to vacate the license suspension portion of the sentence.
[2] We reject any suggestion defendant makes that the summons incorrectly cited the statutory violation and should have been dismissed. The form summons issued to defendant, which presumably complied with R. 7:2-1(e)(1), listed various violations including "Speeding" in violation of N.J.S.A. 39:4-98. Defendant was fully apprised of the offense with which he was charged and defended the matter without any suggestion of surprise or prejudice. Moreover, defendant never raised the issue below. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 300 A.2d 142 (1973).
[3] "Business district," "residential district," and "suburban business or residential district" are all terms whose meanings are descriptively defined in N.J.S.A. 39:1-1.
[4] State v. Tropea, 71 N.J. 502, 366 A.2d 657 (1976); 73 N.J. 50, 372 A.2d 315 (1977).
[5] Though affirming our conclusion in this regard, the Court modified our judgment on other grounds, concluding "[t]he reversal of defendant's conviction because of the State's failure to prove an essential element of the offense must . . . result in an acquittal." Tropea, supra, 78 N.J. at 316, 394 A.2d 355.
[6] We reject the notion that because Shpiruk, a county sheriff's officer, was not employed by Montague, her testimony was not entitled to generate such an inference. Our prior language in Craig was not intended to be read so narrowly, particularly in circumstances such as these, where the officer, being "from around [the area]," was familiar with the road and was within her law enforcement agency's jurisdiction, Sussex County.
[7] After oral argument defendant submitted, without leave of court, supplemental materials consisting of a transcript from a wholly unrelated matter to support his position that Sussex County municipal courts routinely sentence motor vehicle offenders in violation of the law. We will not consider the supplemental material because it is entirely outside the record of this case. If counsel wishes to pursue this argument in the future, he must do so before the municipal court within the parameters of the court rules and submit the appropriate statistical analysis along with supporting evidence so that a record is created. He must then pursue the argument through the Law Division before it is ripe for appellate review. R. 2:5-4. The mere submission of a single transcript of an unrelated proceeding will not suffice.