9 A.3d 172 (2010)
417 N.J. Super. 190
STATE of New Jersey, Plaintiff-Respondent,
v.
John GREEN, Defendant-Appellant.
No. A-6199-08T4
Superior Court of New Jersey, Appellate Division.
Submitted May 19, 2010.
Decided November 9, 2010.
*174 John Green, appellant pro se.
Bruce J. Kaplan, Middlesex County Prosecutor, attorney for respondent (Simon Louis Rosenbach, Assistant Prosecutor, of counsel and on the brief).
Before Judges PAYNE, C.L. MINIMAN and WAUGH.
The opinion of the court was delivered by
MINIMAN, J.A.D.
Defendant John Green appeals from a July 7, 2009, judgment after de novo review by the Law Division finding him guilty of speeding in violation of N.J.S.A. 39:4-98,[1] for which he was fined $173 and assessed $33 in court costs. Because the judge did not order the State to provide defendant the discovery to which he was entitled, we now reverse and remand.
On September 8, 2008, at 6:25 a.m. on Route 18 in East Brunswick, Officer Christopher Soke was on patrol conducting laser surveillance with a Stalker Lidar device. He observed defendant's vehicle traveling at a high rate of speed in the left lane. He targeted the vehicle with the Lidar device for three to five seconds. The device made an audible tone indicating excessive speed and displayed a speed of sixty-three miles per hour. The officer was stationed where he had a clear and unobstructed view of the roadway for one thousand feet. He pursued and stopped defendant and issued a summons for speeding, doing sixty-three in a forty-five mile-per-hour zone.
On October 23, 2008, defendant sought discovery in the case. First, he went to the municipal prosecutor to submit his request for discovery and was instructed to go to the Police Department to make this request. Second, he handed a written request for discovery to a person in the Police Department, but the person was unsure of how to proceed. Third, he submitted his written request for discovery on October 27, 2008, to the municipal prosecutor, seeking the following items:
1. Copies of both sides of the arresting officer's ticket.
2. Copies of any notes taken in regards to this traffic stop.
3. A description of the speed measuring device, make and model.
4. The complete history of the officer[']s training on the radar device, where he was trained and by whom.
5. Training manuals from the manufacture[r] of the speed measuring device unit include[ing] operating manuals.
6. Training manuals for the [S]tate of New Jersey and operating procedure for the speed measuring device.
7. Officer[']s log book showing what tickets [were] issued that day by him on Sept 8, 2008.
8. Witness List.
9. List and description of any disciplin[e] taken against this officer in the last year.
10. Repair history of the speed measuring device for the last 12 months.
*175 Defendant added another request on October 27, 2008:
11. Any engineering and speed study used to set the speed limit.
There was some subsequent communication from the municipal prosecutor's office to defendant, and then the police officer apparently sought guidance from the municipal court judge. The upshot of this was judicial consideration, ex parte, of the request for discovery and an undated order inscribed on the written discovery request denying requests numbers five, six, seven, nine, ten, and eleven. Request number four was limited to the laser card,[2] and request number two was required only if the requested notes were in existence. The judge required that the items be turned over within thirty days.
Defendant filed a motion for reconsideration, which was heard on November 10, 2008. As the Middlesex County prosecutor observed on appeal, "[t]here is some indication that the municipal-justice system did not operate altogether smoothly, and by the time defendant first appeared in court on November 10, 2008, he had not received everything to which he was entitled, let alone everything that he wanted."
On November 10, 2008, the date set for trial, the judge ruled that defendant could get the information sought in request number eleven from the State Department of Transportation (DOT) because Route 18 was a state highway and the information could be obtained with a request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. Thus, the judge relieved the prosecutor of the burden of producing this information where he was not going to use it in his case in chief, as he represented. The judge found that request number four would be satisfied by production of the laser card. The judge denied reconsideration of requests numbers five, six, and seven. As to request number nine, the judge determined that defendant had to request this information from the County Prosecutor under OPRA. Last, she denied request number ten. She provided no explanation for these rulings.
The trial was then adjourned, giving defendant an opportunity to receive the ordered discovery. However, on November 13, 2008, defendant wrote to the judge urging that the discovery procedures being used were improper. On December 22, 2008, defendant sought an adjournment of the trial because he still did not have the speed survey from the DOT. He then withdrew this application because he subsequently received that survey.
On January 7, 2009, the matter was reached for trial before another judge. At that time, defendant represented to the trial judge that he had not yet received both sides of the ticket and the description of the speed measuring device, including make and model. However, he had received the speed survey from the DOT. The municipal prosecutor advised the judge that he had the missing discovery with him, except for the model number of the Stalker Lidar device.
The defendant then moved to dismiss for failure to provide discovery, but the prosecutor argued that there was only one model of the Stalker Lidar and, thus, failure to provide the information was not prejudicial. He pointed out that the information defendant sought in this regard was on the ticket he had been issued, even though he did not understand it. The judge concluded that dismissal was inappropriate as a result. He offered to proceed to trial or *176 adjourn the matter to permit defendant to obtain further information about the Stalker Lidar device. Defendant chose to go to trial.
Soke testified to the facts surrounding the issuance of the ticket to defendant. He then went on to testify that when the Lidar device is not directed at a vehicle, it emits a clicking noise indicating that it is operating. When it is so directed, it emits a higher and higher pitched tone depending on the rate of speed. On September 8, 2008, the tone that was emitted was higher than it should be for a car going forty-five miles per hour, telling him the vehicle was speeding. The device then posted a speed of sixty-three miles per hour. According to Soke, the posted speed limit on that section of roadway was forty-five miles per hour.
Soke calibrated the Lidar device before using it on September 8, 2008. When he first turned it on, it did a self-test and displayed eights across the LED screen. The device then displayed the word "pass" and gave an audible tone. Soke then "put the instrument in test mode" and did a series of vertical and horizontal tests at a known fixed object at the town's Public Works Department. The Lidar device passed those tests, and Soke then calibrated the device for two known distances of 100 and 150 feet. Those tests assured Soke that the device was measuring distance correctly.
At that point, the State marked three documents, a March 2007 certificate of accuracy for the Lidar gun, a laminated radar operator card, and a memorandum regarding Lidar field measurements. Soke testified that the certificate was provided by the manufacturer with the device. Soke wrote the serial number from the certificate on the September 8, 2008, summons. The second document was Soke's Lidar operator card attesting to his training, as certified by the manufacturer. The third document was from the town engineer, who certified the accuracy of the distance baselines for calibrating the device. All three documents were moved into evidence.
During cross-examination, the judge would not permit defendant to impeach Soke's testimony regarding the engineering study or the speed survey supplied to him by the DOT as true and exact copies of its records. He ruled that defendant would have to bring in the author because the documents were inadmissible hearsay.
When defendant testified, he offered himself as an expert in electronics, but the judge refused to allow him to so testify because he had not supplied an expert report to the State, although the State apparently did not request any discovery from defendant. The judge also excluded any expert testimony on microwaves and electronics generally because defendant had no experience with radar detectors.
Defendant submitted the DOT's cover letter and speed survey, but the State objected to them going into evidence. The judge barred their admission because there was no one from the State to establish that the documents were kept in the ordinary course of the DOT's business, despite the letter from the DOT representing that it was a true copy of a DOT document.
Defendant moved to dismiss on the ground that the State had not proven that the Stalker Lidar unit used by the State was scientifically reliable, citing State v. Boyington, 153 N.J.Super. 252, 379 A.2d 486 (App.Div.1977). He urged that the Stalker Lidar device had never been adjudicated to be reliable, as Boyington required before test results could be accepted into evidence. The State responded that it did not have the burden to prove *177 the device was scientifically reliable, it had provided a certificate of accuracy from the manufacturer, and Soke testified that he had tested it before he used it on September 8, 2008. The judge denied the motion, taking judicial notice "that the Stalker Lidar is something that has been determined to be scientifically reliable." The judge then gave defendant two weeks to brief the scientific reliability of the device.
On February 18, 2009, the judge placed his decision on the record. After finding the facts from the testimony of Soke, the judge found defendant guilty of speeding, traveling sixty-three miles per hour in a forty-five-mile-per-hour zone. The judge imposed a fine of $173 and $33 in court costs. Defendant protested that he was being penalized for requesting a trial and that he would only have had to pay $115 if he pled guilty. The judge explained that she could impose a fine of up to $250, and the fine she actually imposed was in the middle of the range.
Defendant appealed to the Law Division on February 18, 2009. He submitted a brief in support of his appeal on April 3, 2009, raising a number of errors. The State filed an opposing brief on May 27, 2009, and defendant replied on May 31, 2009. The Law Division judge heard argument and placed her decision on the record on June 24, 2009. In pertinent part, she found:
Now, on a municipal appeal where subject to 3:23-8 the Superior Court is required to hold a trial de novo on the record unless the rights of the defendant were prejudiced below for a variety of reasons, none of which I find here. We have an intelligible record. The Court has all of its discovery that was provided, briefs and response briefs. And I find that there's no reason to indicate that the defendant's rights were prejudiced below. So this will be held on the record.
....
Regarding each of the arguments, first I find the defendant was turned downexcuse methe defendant turned down additional time for the discovery and proceeded to trial and as a result, waived his right to further discovery. It's clear from the transcript that the defendant was given everything, although he may not have been aware of it. But each of the items he was given had information regarding discovery that was granted to him.
In addition, that which he requested, but did not have, could have been obtained by this defendant. The speed measuring device was identified on the summons. That's T-13 through T-16. The speed survey was obtained by this defendant. And training manuals could have been obtained through the company that produced them.
Because the defendant was not necessarily aware he had everything, the trial judge gave him an option to have additional time to review or obtain information. And he did that several times throughout the transcript. However, the defendant declined additional time for discovery and decided to go to trial. I agree with the municipal judge that he waived his rights to additional discovery at that point.
....
... The court rulings regarding discovery were proper and were within the scope of Rule 7:7-7.
Appellant's argument that he should not have to subpoena documents from Stalker is without merit. As noted, attorneys do that on a relatively consistent basis. He could have subpoenaed those items, any of the documents he wanted.
....

*178 In State v. Craig, [150 N.J.Super. 513, 376 A.2d 193 (App.Div.1977),] I already cited that, the court was persuaded that sworn testimony from an officer regarding the speed limit in the municipality in which the officer is employed carries with it that rebuttable presumption that the speed limit was legally obtained. Here, the defendant failed to have the speed survey entered into evidence. And there was, therefore, nothing to contradict the officer's testimony other than arguably testimony from the defendant.
....
The Court properly denied appellant's request to be heard as an expert. There was no notice given by this defendant to be an expert in this case, no information at all prior to the middle of the trial or toward the end of the trial where the defense was asking to testify as an expert. Under our court rules notice has to be given and an expert report has to be furnished. So I agree with the Court in denying his request to be heard as an expert.
Finally, the Court can take judicial notice of the reliability of the LIDAR device, the radar. Officer Soke did testify that he was a certified LIDAR operator with training. And that's in the transcript, page 27. The device was accurate and calibrated before and after the stop. Transcript page 47 and 48. Officer Soke also testified that summonses are not issued for distances beyond the 1,000 feet, and he confirmed the distance was 100 feet. That's on page 57.
I find that the Court's findings at the municipal level [are] consistent with the rulings in the matter of the admissibility of motor vehicle speed readings produced by the LTI Marksman. That was a 20/20 laser speed detector system. And that the Court appropriately took judicial notice of the scientific reliability of the device.
The judge found defendant guilty of speeding and imposed the same fines and costs as did the municipal court judge. She entered a judgment of conviction on July 7, 2009, and defendant appealed.
Defendant raises the following issues for our consideration:
POINT ITHE COMPLAINING WITNESS HAS SPECIAL TREATMENT BY THE COURT.
POINT IITHE MUNICIPAL COURT ERRED IN NOT GRANTING DEFENDANT'S DISCOVERY.
POINT IIITHE STATE DID NOT PROVE THE SPEED LIMIT.
POINT IV[THE] STATE CONDUCTED A [TRIAL] BY AMBUSH.
POINT VPROBLEMS WITH OFFICER'S TESTIMONY.
POINT VIDEFENDANT SHOULD HAVE BEEN ALLOW[ED] TO TESTIFY AS AN EXPERT WITNESS ON ELECTRONIC DEVICES.
POINT VII[THE] STATE FAILED TO SHOW THAT THIS DEVICE WAS SCIENTIFICALLY RELIABLE.
POINT VIIIVERDICT.
POINT IXDEFENDANT WAS PENALIZED FOR REQUESTING A TRIAL.
Our primary concern is defendant's requests for discovery. The State concedes that "the trial court erroneously refused to permit defendant to examine certain items, and that refusal requires reversal." Specifically, the State recognizes that defendant should have been permitted access to the Stalker Lidar manual that came in the box with the device and the training manual that was used in the class when Soke was trained to use the Stalker Lidar device, and that the municipal prosecutor *179 was obligated by Rule 7:7-7(a) to provide this access.[3]Cf. State v. Ford, 240 N.J.Super. 44, 51, 572 A.2d 640 (App.Div. 1990) (discussing R. 3:13-3 and discovery requests pertaining to a breathalyzer device and finding that "[t]he State should not routinely be required to supply defendants with manuals for the operation of the instrument used, as defense counsel seeking such a manual may inspect or copy it through arrangements with the prosecution under the rule"). Both of these manuals are maintained in the East Brunswick Police Department. This concession, however, is not the end of the matter.
Discovery in the municipal courts is governed by Rule 7:7-7. It provides that the municipal prosecutor "shall be responsible for making government discovery available to the defendant." R. 7:7-7(a). The defendant is permitted to obtain discovery from the State of any relevant "books, originals or copies of papers and documents, or tangible objects, buildings or places that are within the possession, custody or control of the government." R. 7:7-7(b)(6). The State may also obtain discovery "on written notice to the defendant" of "the names and addresses of each person whom the defense expects to call to trial as an expert witness." R. 7:7-7(c)(5).
Discovery under Rule 7:7-7 is not limited to the material the prosecutor intends to use at trial. State v. Green, 327 N.J.Super. 334, 340-41, 743 A.2d 357 (App.Div. 2000). Rather, the scope of discovery extends to information and documents that are relevant. See R. 7:7-7. "`Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.
We turn to the requests in dispute. Request number four, the "complete history of the officer[']s training on the radar device," is certainly relevant to whether Soke did or did not have sufficient training on the Stalker Lidar device. See State v. Wojtkowiak, 174 N.J.Super. 460, 463, 416 A.2d 975 (App.Div.1980) (finding the K-55 Radar scientifically reliable but emphasizing that "its accuracy and reliability in any case are no better than the skill of the person operating the radar"). The laser card was only evidence that Soke has some training. However, in Wojtkowiak, we required the State to adduce the following evidence at the municipal court level:
(1) the specific training and extent of experience of the officer operating the radar, (2) the calibration of the machine in which at least two external tuning forks both singly and in combination should be employed, and (3) the calibration of the speedometer of the patrol car in cases where the K-55 is operated in the moving mode.
[Ibid.]
The judge erred in limiting the scope of this request to the laser card as that hardly established the extent of Soke's training and experience in operating the Stalker Lidar device.
The State has conceded that the documents sought in requests numbers five and six should have been provided to defendant. Those documents are clearly relevant to whether Soke was properly trained and operated the Stalker Lidar device in accordance with the manufacturer's instructions on the day in question. Cf. Ford, supra, 240 N.J.Super. at 50, 572 A.2d 640 (discussing determinations of relevancy in driving-while-intoxicated cases and noting "`that the results of a breathalyzer test shall be generally admissible in evidence when[, in part,] ... administered by a qualified operator and ... used in *180 accordance with accepted procedures'" (quoting Romano v. Kimmelman, 96 N.J. 66, 82, 474 A.2d 1 (1984))).
With respect to request number seven, the officer's September 8, 2008, log book is certainly relevant to the officer's testimony and would have enabled defendant to challenge the accuracy of the officer's ability to recall the events on that date. However, the log book entries should be limited to his use of the Stalker Lidar device on the date in question.
We do not see the relevance of request number nine seeking production of Soke's disciplinary record other than as it might affect his credibility. Defendant did not address this particular request on appeal nor did he do so before the Law Division. As a consequence, we do not address it here, but that is without prejudice to the right of defendant to again pursue this request before the municipal court.
With respect to request number ten, the judge erred when he refused to order the prosecutor to provide defendant with the repair history of the Stalker Lidar device for the twelve months preceding the request. This was evidence that should have been in "the possession, custody or control of the government." R. 7:7-7(b)(6) (emphasis added). It was also undoubtedly relevant. State v. Johnson, 42 N.J. 146, 171, 199 A.2d 809 (1964) (finding that proving the machine is in proper working order is "most essential, in view of the heavy impact the result can have").
These discovery errors would certainly warrant a new trial. However, defendant contends that the State did not prove the speed limit, a failure that would warrant an acquittal. The statute in question provides:
It shall be prima facie unlawful for a person to exceed any of the foregoing speed limitations or any speed limitation in effect as established by authority of section 39:4-98 of this Title.
In every charge of violation of section 39:4-98 of this Title, the complaint and the summons or notice to appear, shall specify the speed at which the defendant is alleged to have driven and the speed which this article declares shall be prima facie lawful at the time and place of the alleged violation.
[N.J.S.A. 39:4-99.]
The "foregoing speed limitations" are found primarily in N.J.S.A. 39:4-98, which provides in pertinent part:[4]
Subject to the provisions of R.S. 39:4-96 and R.S. 39:4-97 and except in those instances where a lower speed is specified in this chapter, it shall be prima facie lawful for the driver of a vehicle to drive it at a speed not exceeding the following:
a. Twenty-five miles per hour, when passing through a school zone during recess, when the presence of children is clearly visible from the roadway, or while children are going to or leaving school, during opening and closing hours;
b. (1) Twenty-five miles per hour in any business or residential district;
(2) Thirty-five miles per hour in any suburban business or residential district;
c. Fifty miles per hour in all other locations, except as otherwise provided in the "Sixty-Five MPH Speed Limit Implementation Act," pursuant *181 to section 2 of P.L.1997, c. 415 (C. 39:4-98.3 et al.).
Whenever it shall be determined upon the basis of an engineering and traffic investigation that any speed hereinbefore set forth is greater or less than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, the Commissioner of Transportation, with reference to State highways, may by regulation ... subject to the approval of the Commissioner of Transportation, except as otherwise provided in R.S. 39:4-8, designate a reasonable and safe speed limit thereat which, subject to the provisions of R.S. 39:4-96 and R.S. 39:4-97, shall be prima facie lawful at all times or at such times as may be determined, when appropriate signs giving notice thereof are erected at such intersection, or other place or part of the highway.
[N.J.S.A. 39:4-98.]
Here, the speed limit in question was allegedly forty-five miles per hour, which is not a speed specified in N.J.S.A. 39:4-98. As such, it must have been established by state regulation, as Route 18 is a state highway. The State did not produce the state regulation establishing forty-five miles per hour as the speed along the stretch of Route 18 that Soke was observing. Defendant urges that Soke's testimony respecting the posted speed limit was insufficient to establish the actual speed limit because he challenged the accuracy of that evidence.
We have previously held that a police officer's sworn testimony respecting the speed limit at the location in question gives rise to a rebuttable presumption that the "speed limit was legally ordained" where the officer's testimony remained uncontroverted and was believed. Craig, supra, 150 N.J.Super. at 515, 376 A.2d 193 (citation omitted); see also State v. Morgan, 393 N.J.Super. 411, 420, 923 A.2d 359 (App.Div.2007) (reaffirming Craig). However, in Morgan, we rejected the "rebuttable presumption" that Craig permitted. Morgan, supra, 393 N.J.Super. at 421, 923 A.2d 359. Instead, we held that "where [a] defendant did not object to the officer's testimony as to the lawful speed limit, the judge was entitled to give that testimony such weight as he deemed appropriate and was permitted to infer from that testimony the speed limit was `legally ordained.'" Ibid. (quoting Craig, supra, 150 N.J.Super. at 515, 376 A.2d 193). Because the defendant had not challenged the officer's testimony, we concluded that the evidence was sufficient to sustain the conviction. Id. at 422, 923 A.2d 359.
Unlike Morgan, defendant sought to impeach Soke's testimony respecting the speed limit. He had in hand the DOT's engineering study and its speed survey. The engineering study showed that certain sections of Route 18 had a fifty-five-mile-per-hour speed limit, and other sections had a speed limit of fifty miles per hour.[5] The speed study indicated that the posted speed in the area at issue was fifty-five miles per hour. Defendant also received a copy of the DOT's Route 18 Regulation LS-83-2, which was adopted in 1983. This document indicated that portions of Route 18 in East Brunswick had a speed limit of fifty miles per hour, and other sections had a speed limit of forty miles per hour. The DOT official who supplied the documents to defendant represented that the documents were "true and exact copies of the records represented" that were on file with the DOT.
*182 N.J.R.E. 803(c) establishes the types of statements that are not dependent on the declarant's availability as a witness. Included among those exceptions to the hearsay rule is one for public records, reports, and findings. It provides that the following documents are not hearsay:
Subject to Rule 807, (A) a statement contained in a writing made by a public official of an act done by the official or an act, condition, or event observed by the official if it was within the scope of the official's duty either to perform the act reported or to observe the act, condition, or event reported and to make the written statement, or (B) statistical findings of a public official based upon a report of or an investigation of acts, conditions, or events, if it was within the scope of the official's duty to make such statistical findings, unless the sources of information or other circumstances indicate that such statistical findings are not trustworthy.
[N.J.R.E. 803(c)(8).]
The judge's exclusion of the certified copies of these records as inadmissible hearsay cannot be sustained. The rule was intended to avoid the necessity of compelling public officials to depart from their usual duties and testify to events they likely would not remember. N.J. Dep't of Envtl. Prot. v. Duran, 251 N.J.Super. 55, 65, 596 A.2d 1090 (App.Div.1991). Not only are such records admissible, they require no authentication. N.J.R.E. 902(a). The inability to use these documents to challenge Soke's speed-limit testimony substantially prejudiced the defense as to the charge of speeding. The record as it stood at the close of the evidence supported the judge's finding that the speed limit was forty-five miles per hour. Thus, defendant is not entitled to a judgment of acquittal. However, the erroneous exclusion of the DOT engineering and speed studies and the state regulations precluded defendant from challenging Soke's testimony in this regard. As a consequence, a new trial is required.
We next consider defendant's argument that he should have been permitted to testify as an expert witness on electronic devices. He was precluded from doing so because he had not served a report on the prosecutor under Rule 7:7-7(c)(5). However, that rule only applies where the State serves a written notice on a defendant of the discovery it seeks. R. 7:7-7(c). No such notice was served here; the State sought no discovery from defendant. Thus, the lack of a report was not an obstacle to defendant's "expert" testimony.
The admission of expert testimony is committed to the sound discretion of the trial judge, State v. Berry, 140 N.J. 280, 293, 658 A.2d 702 (1995) (citing State v. Zola, 112 N.J. 384, 414, 548 A.2d 1022 (1988), cert. denied, 489 U.S. 1022, 109 S.Ct. 1146, 103 L.Ed.2d 205 (1989)), and is governed by New Jersey Rules of Evidence 702-705. Here, the judge concluded that defendant was not qualified to testify as an expert and barred admission of his testimony and opinings. However, the judge failed to conduct a hearing to ascertain the factual testimony that would be offered and the opinions that would be expressed. See N.J.R.E. 104. Thus, the judge lacked any foundation for a determination whether the evidence was admissible. We note in this regard that the factual evidence, if relevant, might be admissible even though expert opinions might not. In any event, lay opinion is permitted in certain circumstances. The judge erred in failing to conduct a hearing under N.J.R.E. 104 to determine the nature and extent of the evidence before excluding defendant's testimony. As a consequence, a new trial is required.
*183 We turn to the scientific reliability of the Stalker Lidar device. Both judges took "judicial notice" of its reliability without citation to any reported decision, apparently because the device had been accepted as reliable in other municipal courts. We have previously addressed the use of judicial notice of the scientific reliability of devices. Boyington, supra, 153 N.J.Super. at 254, 379 A.2d 486. There, we said:
In relation to a device which has not previously been judicially noticed by an appellate court of this State to be scientifically reliable, a trial court should require such reliability to be established before it by expert scientific proof unless judicial notice may properly be taken under either Evid. R. 9(2)(d) or 9(2)(e) [now N.J.R.E. 201(b)(2) or 201(b)(3)]. The latter rule is pertinent here, and it provides that judicial notice may be taken of "specific facts and propositions of generalized knowledge which are capable of immediate determination by resort to sources of reasonably indisputable accuracy."
[Ibid. (emphasis added).]
There are only three cases in New Jersey that have considered the issue of laser speed detection systems, In the Matter of the Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection System, 314 N.J.Super. 211, 714 A.2d 370 (Law Div. 1996) (Laser I), and In the Matter of the Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection System, 314 N.J.Super. 233, 714 A.2d 381 (Law Div. 1998) (Laser II), aff'd sub nom., State v. Abeskaron, 326 N.J.Super. 110, 740 A.2d 690 (App.Div.1999) (Laser III), certif. denied, 163 N.J. 394, 749 A.2d 368 (2000).
In the first case, Judge Stanton considered substantial lay and expert testimony respecting laser speed detection systems in general and the LTI Marksman 20-20 in particular. Laser I, supra, 314 N.J.Super. at 212-13, 227, 714 A.2d 370. As to the former, he was "satisfied that the general concept of using lasers to measure speed is widely accepted in the relevant scientific communities and is valid." Id. at 227, 714 A.2d 370. We accept that finding as sufficient here. The judge then went on to find that he was "not satisfied that the [LTI Marksman 20-20] laser speed detector device is accurate and reliable enough to be used for law enforcement purposes." Ibid. This was so because "no one other than the manufacturer knows the details of how the error trapping in the [LTI Marksman 20-20] detector works." Id. at 228, 714 A.2d 370 (noting that manufacturer refused to release its proprietary information).
The second obstacle was the lack of "adequate performance testing of the [LTI Marksman 20-20] laser speed detector under conditions which exist on ... highways." Ibid. In that respect, Judge Stanton observed:
Indeed, if we had adequate operational testing of the laser speed detector under actual highway conditions, we might be able to accept the detector as being reliable even though we did not have complete details about the way in which the error trapping procedures are designed and programmed. Good performance testing might conceivably put us in a position of being sure that the detector in fact worked reliably, although we were not sure precisely how it managed to achieve its results.
[Ibid.]
Because the proofs did not establish the accuracy of the LTI Marksman 20-20 laser speed detector, the judge prohibited its use. Id. at 230-32, 714 A.2d 370.
Two years later, Judge Stanton again considered the reliability of the LTI *184 Marksman 20-20 laser speed detector in Laser II. There, he concluded that performance testing conducted by the DOT and the New Jersey State Police although "far from perfect, ... was adequate." Laser II, supra, 314 N.J.Super. at 252, 714 A.2d 381. Accordingly, the judge found that speed measurements obtained by using the LTI Marksman 20-20 laser detector device were admissible evidence. Id. at 252-53, 714 A.2d 381.
On appeal, after reviewing "extensive transcripts of the lengthy videotaped hearings before Judge Stanton," we concluded "that Judge Stanton appropriately found in Laser II that, subject to the listed restrictions, the subject laser detector was an appropriate tool in measuring speed." Laser III, supra, 326 N.J.Super. at 116, 118, 740 A.2d 690.
Here, we do not know the internal workings of the Stalker Lidar device, although we do know that lidars[6] generally are "widely accepted in the relevant scientific communities" as a means to measure speed. Laser I, supra, 314 N.J.Super. at 227, 714 A.2d 370. However, we do not know whether the accuracy of the Stalker Lidar device has been established through independent testing. Id. at 228, 714 A.2d 370. In short, the device has not been established as scientifically reliable in New Jersey,[7] which Boyington, supra, 153 N.J.Super. at 254, 379 A.2d 486, requires. As a consequence, it may not be used in the trial courts as proof of speed until its accuracy has been established at least through the minimal type of testing used to establish the scientific reliability of the LTI Marksman 20-20. See Laser II, supra, 314 N.J.Super. at 237-50, 714 A.2d 381.
In light of our disposition of the above issues, the remaining arguments advanced by defendant are moot. Those arguments are found in defendant's Points I, IV, V, VIII, and IX. We comment only briefly on the last point, which is defendant's claim that he was penalized for requesting a trial. When a judge exercises his discretion to sentence a defendant within a sentencing range, he is not limited to the fine that may have been required when a defendant pleads guilty. The latter amount is set without regard to the defendant's driving record, which is a factor, among others, that are considered by a judge in determining the appropriate sentence after trial within the sentencing range, which may be higher, lower, or equal to the fine imposed when a defendant pleads guilty. See N.J.S.A. 39:4-104 (fine between $50 and $200). In taking this case to trial, defendant accepted the risk that the judge would impose a fine that was not equal to what he would have paid had he pled guilty. There was no penalty for taking the case to trial.
The determination of the scientific reliability of the Stalker Lidar shall be determined by the Law Division on remand. If the device is determined to be accurate and reliable, the matter shall be remanded to the municipal court for a new trial on the municipal charge of speeding, which shall be conducted in accordance with this opinion.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] In actuality, the statute that prohibits speeding is N.J.S.A. 39:4-99.
[2] A laser card is a wallet-size card that indicates that the holder of the card has been trained in the use of the Stalker Lidar device.
[3] The State's brief does not respond to any of the other issues raised by defendant.
[4] Other speed limits are found in N.J.S.A. 39:4-98.1, -98.2, -98.5, and -98.9, none of which are relevant here.
[5] The issue respecting the actual speed limit is relevant to the number of points imposed on defendant's driver's license. N.J.A.C. 13:19-10.1.
[6] "The laser speed detector is a lidar device." Id. at 237-38, 714 A.2d 381.
[7] The Stalker Lidar device has been found to be scientifically reliable by the Delaware trial court. Delaware v. Jarwan, No. K00-06-04081, 2000 WL 33113846, 2000 Del.Super. LEXIS 422 (Del.Super.Ct. Dec. 8, 2000).